W. B. JONES v. W. F. KURZ, as Mayor of the City of North
Miami Beach, and H. H. LAPHAM, H. I. MORRIS, R. E.
McDONALD, B. E. ROGERO, LUELLA SQUIRES and CLAUDE
F. DAVIS, as Members of the City Council of the City of
North Miami Beach.

197 So. 491

Division B

Opinion Filed July 9, 1940

Rehearing Denied August 2, 1940

*E. F. P. Brigham,* for Plaintiff in Error;

*James Kytle Williams,* for Defendants in Error.

CHAPMAN, J.—On June 23, 1939, an alternative writ of
mandamus issued out of the Circuit Court of Dade County,
Florida, on the petition of W. B. Jones, as Chief of Police

of the City of North Miami Beach, Florida, commanding the mayor and members of the city council of said city to reinstate W. B. Jones to the office of Chief of Police of the City of North Miami Beach and to pay him the emoluments thereof, or to show cause on a date named why the petitioner should not be reinstated to said office and receive the emoluments arising therefrom.

The alternative writ further alleged that on May 16, 1939, a meeting of the city council was held, attended by four of the six members, and that three of the said four members attending said meeting voted to abolish the office of chief of police previously held by the petitioner and created by Chapter 15824, Special Acts of 1931, Laws of Florida, and that said action was void as the city council was without legal authority to abolish the office of Chief of Police of the City of North Miami Beach.

The respondents filed motions to quash the alternative writ and an answer or return was filed thereto and the same were amended some two or three times, but the substance of the defense tendered was to the effect that the petitioner was discharged and removed from the office of chief of police by the joint and concurrent action of the mayor and city council as required by the terms and provisions of the charter of said city.

The replication of the petitioner to the return and its amendments was to the effect that the actions of the mayor and city council taken or held on May 16, 1939, and on July 3, 1939, was null and void.

Evidence was taken on the issues tendered by the pleadings and on January 4, 1940, the Honorable Paul D. Barns, Circuit Judge, made and entered a final judgment, viz.:

"The above styled and entitled cause having come on before me for trial on the pleadings, and testimony both oral and documentary having been introduced by the parties

and the cause having been argued by counsel for the respective parties, and the court having heretofore entered an order ordering judgment against the petitioner and being now fully advised in the premises; thereupon

"It Is Ordered and Adjudged that the petitioner be and is hereby denied a peremptory writ of mandamus and that the defendant go hence without day with costs assessed against the petitioner herein, fixed in the sum of ......, for which let execution issue.

"Done and Ordered at Miami, Florida, this 4th day of January, A. D. 1940."

From this judgment a writ of error issued, the record perfected and lodged in this Court and a number of reasons advanced for the reversal thereof. It is not necessary, as we see it, for a disposition of this case to discuss the several questions propounded by counsel. The provisions of Chapter 15824, Laws of Florida, Special Acts of 1931, being the charter of the City of North Miami Beach, material and pertinent here are, viz.:

"Section 20. There shall be appointed by the Mayor by and with the consent of the City Council, a City Marshal, or Chief of Police, who shall hold office at the pleasure of the Mayor and City Council, and whose powers and duties shall be such as are now or may hereafter be fixed by ordinance and by this Charter. He shall be the chief executive officer of the municipal court. There shall be appointed by the Mayor by and with the consent of the City Council as herein provided, such police force as the City Council may deem best; provided, that the City Council may by ordinance create and establish a regular police department for said city."

"Section 26. The Mayor of said city shall have the right to suspend any officer or any employee of said city, except members of the City Council; provided, that at the next

meeting of the City Council after such suspension the Mayor shall submit to the City Council, in writing, the cause of such suspension, whereupon the said City Council may inquire into the cause of such suspension, and, if a majority of the City Council shall sustain the charges preferred by the Mayor, the officer shall be dismissed, otherwise he shall be reinstated. The Mayor shall have the right to appoint some person to perform the duties of said suspended officer or employee, until the Council shall have passed upon such suspension. If such suspension is sustained by the Council, a successor shall be appointed and confirmed as herein provided.

"The City Council shall also have the right by resolution adopted by a unanimous vote of all members present at said meeting and actually voting, and without action on the part of the Mayor, to summarily remove any city officer or employee, except the Mayor or members of the City Council."

The minutes of the City Council of North Miami Beach on May 16, 1939, material are, .viz.:

"The Mayor then gave a report of the committee working with him on the police department, and upon recommendation of the committee that Rex McLeod be appointed as police officer to replace Chief W. B. Jones, asked that the appointment be confirmed by the Council. The committee on police operations also recommended that the title 'Chief' be dropped and that both officers have the same status. Each of the two police officers is to receive $115.00 per month. Upon motion of Councilman Claude F. Davis, and second of Councilman R. E. McDonald, the appointment was confirmed as shown by the following vote: Councilman H. H. Lapham, not voting; Councilwoman Luella C. Squires, Yes; Councilman R. E. McDonald, Yes; and Councilman Claude F. Davis, Yes."

On July 3, 1939, the following resolution was adopted by the city council, viz.:

"WHEREAS, on May 16th, 1939, MAYOR W. F. KURZ gave an oral report of the conclusions of the Committee heretofore appointed by the Council said committee having consisted of Councilman B. E. ROGERO, Councilman CLAUDE F. DAVIS, Councilman R. E. McDONALD and Honorable R. J. HENDRICKS: and

"WHEREAS, the report of the said Committee as given by the Mayor made the following recommendations, to-wit:

"(a)    That Rex McLeod be appointed as police officer to replace Chief W. B. Jones.

"(b)    That the title 'Chief' be dropped and that there be no officer regularly known as Chief of Police.

"(c)    That Rex McLeod and Harold Jones each have concurrent jurisdiction and the same status on the police force.

"(d)    That the said two officers, McLeod and Jones to receive this date the sum of One Hundred Fifteen Dollars a month as and for their salaries as police officers of the City of North Miami Beach; and

"WHEREAS, the Mayor having rendered his report as above, and having notified the Council that he had appointed Rex McLeod as police officer to replace W. B. Jones, asked that such appointment be confirmed by the Council; and,

"WHEREAS, there were present at the Council meeting four members of the council, to-wit, H. H. LAPHAM, LUELLA SQUIRES, R. E. McDONALD and CLAUDE F. DAVIS, and the Council, composed of the foregoing, ratified the appointment of Rex McLeod to replace Chief W. B. Jones, with Councilman H. H. Lapham not voting; and

"WHEREAS, the further and additional recommendations of the Mayor not having been acted upon, as will be shown

by the minutes of the meeting of the Council of May 16th, 1939;

"Now, THEREFORE, BE IT RESOLVED, that the Council respectfully declines the suggestion that the title 'Chief' be dropped by reason of the fact that the Charter of the City expressly states that a chief of police is a component part of the official family of a city; and

"FURTHER RESOLVED that the recommendation be and the same is hereby adopted that both officers, to-wit, Rex McLeod and Harold Jones have concurrent jurisdiction and the same status on the force; and

"FURTHER RESOLVED that the Council does adopt the suggestion of the change in salary, and that the same be put in force by ordinance; and

"FURTHER RESOLVED that the action of the Mayor and cf the City Council in terminating the tenure of office of Chief W. B. Jones, and the appointment of Rex McLeod be and the same is hereby ratified and confirmed, and the council hereby agrees to, endorses, ratifies and confirms the actions of the Mayor in the appointment of Rex McLeod and the discharge of W. B. Jones.

"Councilman B. E. Rogero made a motion, seconded by Councilman Claude F. Davis, that the Minutes show that there was a quorum, to-wit: four members of the City Council present, and that the vote on the foregoing Resolution was unanimous. Motion carried."

The mayor, members of the city council, and the clerk whose business assignment was to make a written record or keep the minutes of the city council, were called as witnesses and gave evidence in the lower court and testified that the minutes and resolution, *supra,* were adopted by the City Council of said City.

We fail to find error in the record. The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and THOMAS, J., concur.

BROWN and BUFORD, J. J., dissent.

Chief Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J. (dissenting).—As stated in the opinion accompanying the judgment of the learned trial judge in this case, the proceedings against the petitioner by the municipal authorities were evidenced by the minutes of the council of May 16, 1939, and the minutes of July 3, 1939, which are set forth in the opinion of Mr. Justice CHAPMAN. After setting forth the minutes of these two meetings, the Circuit Judge made the following comments:

"It is also true that the Mayor and council by the same act attempted to abolish the office of 'Chief' of Police but the legislative Act provides for a 'Chief' and their act in this respect was a nullity. The office continues. They also attempted to give the two police officers the same status. This too was a nullity.

"Has the petitioner Jones as Chief of Police been discharged? I take it that he was, by another, to-wit, Rex McLeod having been appointed to his place by the Mayor and the City Council. It is true the language used was not as explicit as .it might have been, but it is clear that both the Mayor and Council replaced Jones with McLeod.

"McLeod, upon replacing Jones, became Chief, and if he did not, then of course Jones is still Chief and McLeod is only an additional patrolman. Either Jones is Chief and McLeod an additional patrolman or else McLeod is Chief and Jones discharged because of McLeod being appointed to his place. I find the latter to be true and an appropriate final judgment ordered entered against the petitioner."

The decision of this case must turn upon the question propounded by the circuit judge above as follows: "Either Jones is Chief and McLeod an additional patrolman, or else McLeod is Chief and Jones discharged because of McLeod being appointed to his place." Judge Barns found the latter to be true. This raises a rather peculiar and unusual question. My own view of it is that the means adopted to sever Jones' tenure of office as chief of police by an attempt to abolish that office, was, as stated by the trial judge, illegal and void, and that the mere assertion that McLeod was appointed by the mayor and city council as a "police officer," not as city marshal or chief of police, for the purpose of replacing Jones, whom the council evidently thought they had abolished along with his office, was likewise null and of no effect. This erroneous action was not cured by the subsequent action of the city council on July 3, 1939, in which they endeavor to correct their former action abolishing an office which the Legislature had created. As above shown, the trial court found that Jones had been removed by implication by reason of the appointment of McLeod to the police force, but the language used by the circuit judge in his opinion shows that he was not so sure of his ground.

Under the charter Act of the City, it takes the joint and concurrent action of the mayor and the city council to terminate the tenure of office of the chief of police or city marshal. In my opinion this record fails to show that any lawful action was taken by the mayor and city council to terminate plaintiff in error's tenure of office. Of course, every member of the police force of a city, whether he be a policeman or a patrolman is a police officer. But there is a distinction between the duties and the functions of a chief of police or city marshal and those of a mere patrolman or policeman. This is indicated by the City charter here

involved. Hence, while the chief of police is a police officer, a police officer is not necessarily a chief of police. The minutes of the council of may 16th are very ambiguous concerning the office to which McLeod was appointed and obviously incomplete in that they omit to state by what method plaintiff in error was removed from the police force. Before plaintiff in error could be *replaced* on the police force, he must first have been *displaced* in some manner. The method of displacement adopted, as found by the minutes, was an attempt to abolish the office of chief of police, which the city council had no authority to do. The oral testimony indicates that the city council was probably attempting to get rid of Jones in an indirect manner by abolishing the office of chief of police, as indicated by the minutes themselves, but the method adopted did not carry that intention into effect.

It is contended that the appointment of McLeod to replace Jones terminated the tenure of office of Jones as Chief of Police. Surely this contention cannot be maintained. If the city council and mayor intended to abolish the office of chief of police, as the minutes indicated, they could not have intended to appoint McLeod to an office which they intended to abolish. But the minutes of the two meetings really indicated that the mayor and city council only intended to appoint Rex McLeod as a police officer in the nature of a patrolman and not as chief of police or city marshal. This construction of the minutes is also borne out by the oral testimony.

To give the appointment of another the effect of a removal, the appointment of such other must be to the identical office in order to work such removal. This applies of course to offices that are held at the pleasure of the appointing power. See 43 C. J. 656; 19 R. C. L. 935. The minutes of July 3, 1939, definitely preclude the idea that

the city council intended to appoint McLeod as chief of police. Furthermore, those minutes show that McLeod and another patrolman, Harold Jones, were given the same status on the force, it being admitted by the mayor and president of the city council that Harold Jones was only a patrolman. See 43 C. J. 462.

My conclusion is that McLeod did not become chief of police by his appointment as a patrolman and that the tenure of office of plaintiff in error as chief of police was never legally terminated. It follows, therefore, that the judgment below should be reversed.